IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRUD ROSSMANN,                    )
                                  )
        Plaintiff,                )
                                  )
            v.                    )     1:08cv316 (JCC)
                                  )
RONALD H. LAZARUS, ESQ.,          )
et al.,                           )
                                  )
        Defendants.               )

## M E M O R A N D U M   O P I N I O N

_____This matter is before the Court on four separate

motions brought by eleven different Defendants.  Two of the

motions seek dismissal under Rule 12(b)(6), and two seek

dismissal or, in the alternative, summary judgment.  For the

following reasons, the Court will grant three of the motions and

grant in part and deny in part the remaining motion.

### I. Background

This lawsuit arises out of the 2003 sale of Plaintiff

Brud Rossmann's[1] ("Plaintiff") home in Vienna, Virginia.

Plaintiff purchased this property, located at 2321 Sawtooth Oak

Court in Vienna, on September 8, 2000.  The property was secured

---

[1] The Court notes that while Plaintiff has filed this lawsuit pro se, he
is an attorney licensed to practice law in the state of New York.
Consequently, the Court will hold Plaintiff's pleadings and briefs to the same
standard it would if he were represented by counsel, and not provide him the
benefit of the doubt that is normally afforded a pro se plaintiff not versed
in the practice of law.

by two mortgage loans from Defendant Roslyn National Mortgage Corporation ("Roslyn National").  On or about February 1, 2001, Defendant EverHome Mortgage Company ("EverHome"), f/k/a Alliance Mortgage Company ("Alliance"), purchased and began servicing the primary mortgage loan.  The other loan, a $78,537 second-lien position home equity loan, was purchased by Defendants Chase Manhattan Bank USA, N.A., Chase Manhattan Mortgage Corporation, and Chase Home Finance LLC (collectively, "Chase") on February 15, 2001.  Plaintiff later decided to refinance the primary mortgage loan, and on July 23, 2001, closed on a new mortgage loan in the amount of $420,000, payable to Defendant American Home Mortgage Corporation ("American Home").  After Plaintiff closed on the new loan, EverHome ceased servicing the old loan.

In September 2001, Defendant Astoria Federal Savings and Loan Association ("Astoria") purchased and began servicing the July 2001 loan.  Around February 2003, Plaintiff became delinquent in his payments on the loan.  On March 10, 2003, Astoria referred Plaintiff's file to Virginia counsel and requested that the substitute trustee conduct a foreclosure sale of 2321 Sawtooth Oak Court.  A foreclosure sale was set to take place on April 7, 2003, but was cancelled on April 1, 2003.  The debt owed Astoria under the July 2001 loan was paid in full on June 1, 2003, the date on which all of Astoria's contact with Plaintiff ended.

On October 17, 2002, prior to becoming delinquent in his payments on the July 2001 loan, Plaintiff engaged the services of Defendant Dorothy Kee ("Kee"), an employee of Defendant Re/Max Elite Properties, Inc. ("Re/Max Elite"),[2] to be the listing agent for the sale of 2321 Sawtooth Oak Court.  On that date, Plaintiff's home was listed at $624,927.  A short time later, in January 2003, Plaintiff was incarcerated.  As a result, it became necessary to handle his real estate affairs through a power of attorney.  On January 26, 2003, Plaintiff granted power of attorney to Theresa Amato, and on March 28, 2003, Plaintiff granted power of attorney to his uncle, Jeff Jones ("Jones").  The power of attorney gave Jones the ability to conduct Plaintiff's affairs in relation to the sale of 2321 Sawtooth Oak Court.

On April 3, 2003, Plaintiff and Defendants Henry C. Osborne, Jr. and Nanci A. Osborne ("the Osbornes") entered into a contract for the sale of 2321 Sawtooth Oak Court (the "Sales Contract") in which the Osbornes agreed to purchase the property for $565,000.  To secure their purchase, the Osbornes placed a $10,000 earnest money deposit with Defendant Jobin Realty ("Jobin").  Due to Plaintiff's incarceration, Jones signed the Sales Contract on Plaintiff's behalf.  The Sales Contract

---

[2] Re/Max Elite was purchased by Defendant Re/Max Allegiance in August of 2003.

specified both April 25, 2003 and April 30, 2003 as closing dates.

In early April 2003, Defendant Old Dominion Settlements, Inc., trading under the name Key Title (collectively, "Key Title"), received the Sales Contract in order to perform the closing for 2321 Sawtooth Oak Court.  Key Title also received a copy of the Osbornes' $10,000 deposit and a copy of the document granting power of attorney to Jones.  Defendant Ronald H. Lazarus, Esq., ("Lazarus") a principal and employee of Key Title and a partner with Defendant Cregger and Lazarus, LLP, ("Cregger and Lazarus") contacted Jones and informed him that the power of attorney was not notarized and that, as a result, it could not be used for closing.  On April 16, 2003, Key Title received the title abstract that disclosed four outstanding liens against 2321 Sawtooth Oak Court, two of which presented title defects: an old "unreleased" EverHome loan that should have been paid and released after the July 2001 refinancing, and a lien on the property to secure the payment to Mercedes Benz of a car loan for Plaintiff's Audi.  Because these title defects were not resolved by either April 25 or April 30 – the closing dates listed in the Sales Contract – the closing could not go forward.

On May 17, 2003, Lazarus met with Plaintiff at the Fairfax County Detention Center and had Plaintiff sign a specific power of attorney authorizing Jones to sell Plaintiff's home, which was then notarized.  On May 20, 2003, EverHome acknowledged

that the unreleased loan had been paid off and agreed in writing to release their lien.  The next day, the Osbornes agreed to extend the Sales Contract deadline to May 28, 2008 to resolve any remaining title issues.  After the Audi was finally sold, the Osbornes closed on 2321 Sawtooth Oak Court.  On June 4, 2003, Lazarus had a package delivered to Plaintiff informing him that the closing was complete.

On April 1, 2008, Plaintiff filed a Complaint against 16 different individuals and entities that were involved in the sale of his home.  On May 9, 2008, Plaintiff filed an Amended Complaint that added three more defendants.  In total, Plaintiff has sued the following defendants: Lazarus, Key Title, Cregger & Lazarus, Kee, Re/Max Elite, Re/Max Allegiance, Jobin, the Osbornes, Everhome, Chase, Astoria, American Home, Roslyn National, and ABC Insurance Company (collectively, "Defendants"). The Amended Complaint totals 138 pages and 63 counts.

On June 19, 2008, Defendants Kee, Re/Max Elite, and Re/Max Allegiance (the "Kee Defendants") filed a Motion to Dismiss or for Summary Judgment.  On July 1, 2008, Chase filed a Motion to Dismiss.  EverHome filed its own Motion to Dismiss on July 23, 2008.  Finally, on July 31, 2008, Lazarus, Key Title, and Cregger & Lazarus (the "Key Title Defendants") filed a Motion

to Dismiss or in the Alternative for Summary Judgment.[3]  These
matters are currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of the complaint, *see Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."  *De
Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir.
1991)(citations omitted); *see also Conley v. Gibson*, 355 U.S. 41,
45-46 (1957).

In passing on a motion to dismiss, "the material
allegations of the complaint are taken as admitted."  *Jenkins v.
McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).
Moreover, "the complaint is to be liberally construed in favor of
plaintiff."  *Id.*  In addition, a motion to dismiss must be
assessed in light of Rule 8's liberal pleading standards, which
require only "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P. 8.
However, while Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels
and conclusions, and a formulaic recitation of the elements of a

---

[3] On July 30, 2008, the Osbornes and Jobin filed their own Motion to
Dismiss, as did Astoria on August 5, 2008.  These Motions will be heard on
September 5, 2008 and September 19, 2008, respectively.

cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007)(citation omitted).

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

The Court will now address each Motion separately.

### A. The Kee Defendants' Motion

Plaintiff brings twelve counts (Counts XXXVII through XLVIII) against the Kee Defendants that raise four types of

claims: breach of contract, breach of fiduciary duty, negligence, and fraud.  All of the counts focus on Plaintiff's contention that Kee should have sought the forfeit of the Osbornes' $10,000 earnest money deposit.  Plaintiff also alleges that either his signature was forged on the Sales Contract or that his signature was forged on the document granting Jones power of attorney.

The Kee Defendants argue that the statute of limitations bars each of Plaintiff's claims.  In the context of a 12(b)(6) motion to dismiss, whether a claim should be dismissed based on the affirmative defense that it is time-barred depends on whether the complaint "sets forth *on its face* the facts necessary to conclude that Plaintiff's claims are barred by the statute of limitations."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (emphasis in original).  The Court will take each claim in turn.

### 1) Fraud: Counts XXXVIII, XLII, and XLVI

In Virginia, the statute of limitations for fraud is two years, and begins running when the alleged fraud is discovered or should have been discovered by the exercise of reasonable diligence.  Va. Code Ann. §§ 8.01-243 & 8.01-249; *Virginia Imports, Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003).  The discovery rule places the burden on the plaintiff "to prove that he acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding

the commencement of the action." *Hughes v. Foley*, 128 S.E.2d
261, 263 (Va. 1962).  To comply with the requirement of due
diligence, the plaintiff must use "[s]uch a measure of prudence,
activity, or assiduity, as is properly to be expected from, and
ordinarily exercised by, a reasonable and prudent [person] under
the particular circumstances."  *Id.*

    Here, the Kee Defendants contend that the statute of
limitations on the fraud claims against them began to run in May
2003, when Plaintiff learned that his house was being sold for a
price of $565,000 and that his house did not close on the dates
specified in the Sales Contract.  Alternatively, the Kee
Defendants argue that the statute of limitations began to run on
June 20, 2005, when in an email to an employee of Re/Max
Allegiance Plaintiff admitted to having knowledge of the sale of
his home in 2003.  Plaintiff, pointing to exhibits attached to
his Amended Complaint, contends that he did not learn of the
extent of the Kee Defendants' alleged fraud until April 20, 2006,
a date less than two years prior to the filing of the Complaint.

    There seems to be little question that the fraud, if it
occurred at all, took place in April and May of 2003.  The issue
then is whether Plaintiff's allegation that he did not discover
the fraud until April 2006 satisfies the requirements of
Virginia's discovery rule.  At this juncture, prior to discovery,
the Court does not believe that it is equipped to answer this
question.  While the Kee Defendants also cast their motion as one

for summary judgment, the Court finds that summary judgment would be premature without first allowing some discovery regarding this issue.  *See Temkin v. Frederick County Com'rs*, 945 F.2d 716, 719 (4th Cir. 1991) ("Summary judgment may only be entered after adequate time for discovery.") (internal quotations omitted). Therefore, the Court will deny the Kee Defendants' Motion with respect to Counts XXXVIII, XLII, and XLVI.

### 2) Negligence: Counts XXXIX, XLIII, and XLVII

The statute of limitations for negligence is two years, and begins to run on the date the plaintiff is injured, even if the injury is slight.  Va. Code Ann. §§ 8.01-230, 8.01-243 & 8.01-248; *McHenry v. Adams*, 448 S.E.2d 390, 392-93 (Va. 1994). However, under Virginia law, professional malpractice actions are treated as breach of contract actions and therefore fall within the limitations period applicable to contract actions.  *Ranney v. Nelson*, 176 Fed. Appx. 405, 409 (4th Cir. 2006); *see also Virginia Military Institute v. King*, 232 S.E.2d 895, 899-900 (Va. 1977) (finding that action for the negligence of an architect, while sounding in tort, was an action for breach of contract governed by the statute of limitations applicable to contracts); *Oleyar v. Kerr*, 225 S.E.2d 398, 400 (Va. 1976) (reaching the same conclusion as *King*, except in a negligence action against an attorney).  The statute of limitations for breach of a written contract is five years, and the cause of action accrues and the limitations period commences on the date of the alleged breach.

Va. Code Ann. §§ 8.01-230 & 8.01-246(2); *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).  The statute of limitations for breach of an oral contract or implied contractual duties is three years.  Va. Code Ann. § 8.01-246(4); *see also Laios v. Wasylik*, __ F. Supp. 2d __, 2008 WL 2741158, at *2 (E.D. Va. Apr. 2, 2008).

Here, Plaintiff's negligence counts are effectively professional malpractice claims against the Kee Defendants based on Kee's work as a real estate agent who had contracted with Plaintiff to help sell his home.  Because the contractual relationship between Plaintiff and Kee was based on a written listing agreement, the five-year statute of limitations applies. Plaintiff alleges that Kee breached the listing agreement by extending it past its termination date of April 17, 2003 without proper legal authorization and to her direct, unlawful financial benefit.  Given that the alleged breach occurred on April 17, 2003 and Plaintiff filed suit on April 1, 2008, Plaintiff's negligence claims are within the five-year time limit.  While the Kee Defendants argue for summary judgment on the ground that there was no contractual breach, the Court will, as with the fraud claims, wait until after discovery has taken place to decide any motion for summary judgment.  *See Temkin*, 945 F.2d at 719.  Therefore, the Court will deny the Kee Defendants' Motion with respect to Counts XXXIX, XLIII, and XLVII.

### 3) Breach of Contract: Counts XXXVII, XLI, and XLV

The analysis applied by the Court in III.A.2 applies to Plaintiff's breach of contract claims as well.  Therefore, the Court will deny the Kee Defendants' Motion with respect to Counts XXXVII, XLI, and XLV.

### 4) Breach of Fiduciary Duty: Counts XL, XLIV and XLVIII

A breach of fiduciary duty claim is governed by a two-year statute of limitations, which begins to run on the date the plaintiff is injured.  Va. Code Ann. §§ 8.01-230 & 8.01-248; *Goldstein v. Malcolm G. Fries & Assocs., Inc.*, 72 F. Supp. 2d 620, 626 (E.D. Va. 1999); *Williams v. Reynolds*, 2006 WL 3198968, at *3 (W.D. Va. Oct. 31, 2006).  The Kee Defendants argue that because any injury Plaintiff suffered occurred in 2003 when his home sold, the statute of limitations has run and his breach of fiduciary duty claims must fail.  In response, Plaintiff argues that the discovery rule should apply to these claims based on the Fourth Circuit's decision in *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 235 (4th Cir. 2000), where the Court held that a fiduciary that engages in self-dealing creates a presumption of fraud.  *Id.*  However, this Court does not read *Al-Abood* as applying the discovery rule to breach of fiduciary duty claims that happen to create a presumption of fraud.  Without clearer direction from the Fourth Circuit or the Virginia courts, this Court does not believe that it should contradict Virginia statutory law and apply the discovery rule to breach of fiduciary

12

duty claims.  Therefore, because the statute of limitations on these claims ran in 2005, they are untimely, and the Court will grant the Kee Defendants' Motion with respect to Counts XL, XLIV and XLVIII.

**B. Chase's Motion**

Plaintiff brings six claims (Counts VIII through XIII) against Chase for violation of 26 U.S.C. § 7434 and Va. Code. Ann. § 6.1-423, violation of the Fair Credit Reporting Act ("FCRA"), breach of contract, fraud, negligence, and breach of fiduciary duty.  Chase moves to dismiss all claims.  The Court will take each claim in turn.

1) 26 U.S.C. § 7434 and Va. Code Ann. § 6.1-423: Count VIII

In his Amended Complaint, Plaintiff alleges that Chase filed a fraudulent 2003 Form 1098 with the Internal Revenue Service ("IRS") in violation of 26 U.S.C. § 7434 and Va. Code Ann. § 6.1-423.  Those who receive interest payments over $10 per year are required to file an information return with the IRS containing the aggregate amount of such payments and the name and address of the person to whom paid.  *See* 26 U.S.C. § 6049.  Under 26 U.S.C. § 7434, a person may bring a civil action against another who "willfully files a fraudulent information return with respect to payments reported to be made to any other person."  26 U.S.C. § 7434.  To create an actionable claim under 26 U.S.C. § 7434, the information return itself must be fraudulent.  *See*

*Bailey v. Shell Western E&P, Inc.*, 1998 WL 185520, at *2-3 (N.D. Tex. Apr. 14, 1998) (dismissing Plaintiff's 26 U.S.C. § 7434 claim because the information return was accurate).  In addition, a claim under 26 U.S.C. § 7434 requires proof of deceitfulness or bad faith in connection with filing an information return.  *See Nash v. United States*, 2004 WL 3176885, at *6 (E.D. Mo. Oct. 12, 2004) (finding insufficient the plaintiff's assertion of fraud under 26 U.S.C. § 7434 without any supporting evidence).

Chase argues that, according to the exhibits that Plaintiff attaches to his Amended Complaint, the 2003 Form 1098 filed by Chase was indisputably accurate.  The Form 1098, attached as Exhibit 17, reports interest paid by Plaintiff for the year 2003 in the amount of $4,686.19.  Ex. 17 to Pl.'s Am. Compl.  Exhibit 18 contains a partial copy of Plaintiff's payment history and shows all of his interest payments for 2003.  *Id.*, Ex. 18.  These interest payments total $4,686.19.  *Id.*  In other words, Plaintiff's own exhibits demonstrate that the reported amounts in the 2003 Form 1098 filed by Chase were in fact correct.  While a court must accept as true the facts set forth in the exhibits attached to a complaint, it "'need not accept as true the legal conclusions drawn from the facts . . . [or] unwarranted inferences, unreasonable conclusions, or arguments,' such as conclusory allegations in the complaint that are contradicted by the attachments."  *Jeffrey M. Brown Assocs. v. Rockville Ctr., Inc.*, 7 Fed. Appx. 197, 202 (4th Cir. 2001)

14

(unpublished) (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("In the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10© . . . the exhibit prevails.")). Because Plaintiff's exhibits demonstrate no inaccuracies in his 2003 Form 1098, he fails to state a claim for relief under 26 U.S.C. § 7434, and this portion of Count VIII will be dismissed.

Section 6.1-423 of Virginia's Mortgage Lender and Broker Act: (1) requires escrow amounts retained by mortgage lenders to be kept in segregated accounts; (2) prohibits holders of subordinate mortgages from requiring borrowers to pay money into escrow accounts except in limited circumstances; and (3) contains notification requirements for mortgage lenders who hold insurance money in escrow. *See* Va. Code Ann. § 6.1-423. Plaintiff contends that his Amended Complaint alleges a violation of both (1) and (2). The Court disagrees. While Plaintiff does allege that Chase concealed escrow arrangements in his name, *see* Pl.'s Am. Compl. ¶ 114, such conduct is not addressed by § 6.1-423. Therefore, Plaintiff fails to state a claim for relief under the statute, and the Court will grant Chase's Motion to Dismiss Count VIII.

### 2) FCRA: Count IX

Plaintiff alleges that Chase violated the provision of FCRA, 15 U.S.C. § 1681s-2, that imposes duties on furnishers of

15

information to report accurate information to credit reporting agencies.  There is no private right of action for violation of 15 U.S.C. § 1681s-2(a).  *See* 15 U.S.C. § 1681s-2(d); *Nelson v. Equifax Information Services, LLC*, 522 F. Supp. 2d 1222, 1230 (C.D. Cal. 2007); *Rollins v. Peoples Gas Light and Coke Co.*, 379 F. Supp. 2d 964, 966 (N.D. Ill. 2005); *BankOne, N.A. v. Colley*, 294 F. Supp. 2d 864, 869-70 (M.D. La. 2003).  By contrast, there is a private right of action under § 1681s-2(b), which imposes duties on furnishers of credit information to a consumer reporting agency after the agency notifies the furnisher of a disputed claim.  15 U.S.C. § 1681s-2(b).  To state a claim under this section, Plaintiff must allege: (1) that he notified a consumer reporting agency that he disputed the accuracy of information in his consumer report; (2) that the consumer reporting agency notified Chase of Plaintiff's dispute; and (3) that Chase failed to adequately investigate after receiving the notice from the consumer reporting agency.  *Id.*; *see also Ryder v. Washington Mut. Bank, FA*, 371 F. Supp. 2d 152, 154 (D. Conn. 2005) (granting a motion to dismiss on plaintiff's FCRA claims because the complaint did not allege that the furnisher failed to properly investigate a disputed claim after receiving notification of the dispute from a consumer reporting agency); *Colley*, 294 F. Supp. 2d at 870 (granting summary judgment on plaintiff's FCRA claims because there was no evidence that the

16

furnisher received notice of a dispute from a consumer reporting agency).

Chase contends that Plaintiff's Amended Complaint fails to allege that Chase received any notification from a consumer reporting agency indicating that Plaintiff disputed the completeness or accuracy of information provided to that agency. The Court agrees that Plaintiff's Amended Complaint is deficient in this manner.  However, in his opposition to Chase's Motion, Plaintiff attaches exhibits indicating that he did in fact notify consumer reporting agencies of inaccurate information in his consumer report.  *See* Exs. 1-8 to Pl.'s Reply to Chase's Mot. to Dismiss.  Plaintiff also argues that on a motion to dismiss the Court should draw the inference that the consumer reporting agencies notified Chase and that Chase failed to investigate. Even were the Court to draw this inference, it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F. Supp. 2d 909, 917 n.9 (E.D. Va. 2004) (quoting *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)); *see also Davis v. Cole*, 999 F. Supp. 809, 813 (E.D. Va. 1998) (refusing to consider additional allegations offered in response to motion to dismiss).  Because Plaintiff's Amended Complaint itself fails to allege that Chase received any notification from a consumer reporting agency indicating that Plaintiff disputed the completeness or accuracy of information

provided to that agency, Plaintiff has failed to state a claim for relief under FCRA, and the Court will grant Chase's Motion to Dismiss Count IX.[4]

### 3) Breach of contract: Count X

Plaintiff alleges that Chase breached the written loan agreements between the parties that were entered into on September 8, 2000, and again in mid-2001 upon Plaintiff's refinancing.  Under Virginia law, a cause of action for breach of contract requires "the existence of a duly executed and enforceable agreement; performance or offers to perform by plaintiffs; that defendants failed to perform; that the breaches caused actual damages; and that those damages are recoverable under Virginia law."  *Johnson v. D & D Home Loans Corp.*, 2008 WL 851083, at *6-7 (E.D. Va. Jan. 23, 2008) (citing *Carley Capital Group v. Newport News*, 709 F. Supp. 1387, 1396 (E.D. Va. 1989)).  A breach must be "material," which is defined as "a failure to do something that is so fundamental to the contract that the failure

---

[4] Even were the Court to consider the exhibits attached to Plaintiff's reply to Chase's Motion to Dismiss, Plaintiff's FCRA claim would still fail on timeliness grounds.  The statute of limitations under FCRA is the earlier of: (1) two years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) five years after the date on which the violation that is the basis for such liability occurs.  15 U.S.C. § 1681p.  Exhibit 16A, which is attached to the Amended Complaint, contains a copy of one of Plaintiff's credit reports.  *See* Ex. 16A to Pl.'s Am. Compl. This report includes information regarding Plaintiff's Chase account and indicates that Plaintiff was made aware of the alleged FCRA violation on September 27, 2005, the date of the report.  That date was more than two years prior to when Plaintiff filed his Complaint, rendering his FCRA claim untimely.

to perform that obligation defeats an essential purpose of the contract." *Id.*

Here, it is undisputed that Plaintiff has alleged the existence of a loan agreement between the parties. But Chase argues that Plaintiff never indicates any provision within the loan agreement that Chase allegedly breached. Plaintiff does allege that Chase violated "basic escrow [and] other contractual obligations related to loan servicing," Pl.'s Am. Compl. ¶ 126, but Chase complains that this is too unspecific to enable them to identify a provision within the loan agreement that may have been breached. The Court agrees. If Plaintiff cannot even specify the contractual provision that he claims to have been breached, his claim for breach of contract cannot survive. Accordingly, Plaintiff has failed to state a contract claim against Chase, and the Court will grant Chase's Motion to Dismiss Count X.

### 4) Fraud: Count XI

Chase argues that the fraud claim should be dismissed because it is just a restatement of the breach of contract claim. Plaintiff's fraud claim repeats nearly verbatim the allegations set forth in his breach of contract claim. If a fraud claim centers on an act or omission arising out of a contractual duty alone, then the claim is founded upon contract and not tort and must be dismissed. *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998).

19

Plaintiff contends that his fraud claim centers on acts by Chase that arise out of independent common law duties.  But his fraud allegations begin with the statement "Chase and Plaintiff were under written contract pursuant to purchase money mortgage documentation referenced above . . . ."  Pl.'s Am. Compl. ¶ 130.  The next paragraph states that "[t]he terms of the contract were governed by background law, including applicable Federal settlement procedure rules, as well as state lender and escrow requirements."  *Id.* ¶ 131.  These words are the same words, verbatim, that Plaintiff uses to allege his breach of contract claim.  *Id.* ¶¶ 124-25.  While Plaintiff alleges that "Chase had good reason to know from 2001 onward that its servicing and reporting were mistakes, . . . it persisted – prima facie evidence of fraud," *id.* ¶ 135, even a liberal reading of the Amended Complaint reveals that any duty referenced in that paragraph arises out of the contract between the parties.  In other words, Chase's duty to "service" and "report" in a certain fashion arose out of the loan agreements, not some other, independent duty.  Therefore, the Court finds that Plaintiff has failed to state a fraud claim, and will grant Chase's Motion to Dismiss Count XI.

### 5) Negligence: Count XII

Much like Plaintiff's fraud claim against Chase, Plaintiff's negligence claim simply alleges negligent performance of contractual duties.  Because a tort action cannot be based

solely on a negligent breach of contract, Plaintiff has failed to state a negligence claim.  *See Richmond Metro.*, 507 S.E.2d at 347; *see also Umstead v. Chase Manhattan Mortg. Corp.*, 2005 WL 2233554, at *4 (W.D. Va. Sept. 13, 2005).  The Court will grant Chase's Motion to Dismiss Count XII.

### 6) Breach of Fiduciary Duty: Count XIII

Plaintiff's breach of fiduciary duty claim arises out of Chase's alleged establishment of an escrow account without Plaintiff's authorization.  Chase contends that this claim must be dismissed because there is no fiduciary relationship between the parties.  A fiduciary relationship exists where "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence."  *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007) (citations omitted).  Fiduciary duties can arise either from a contractual provision or through a common law duty.  *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).  Virginia courts recognize fiduciary relationships between an attorney and client, an agent and principal, a trustee and *cestui que* trust, parent and child, siblings, and caretaker and invalid.  *Johnson v. D & D Home Loans Corp.*, 2005 WL 850870, at *9 (E.D. Va. Jan. 23, 2008) (citations omitted).  The banker-borrower relationship, however, does not, by itself, establish a fiduciary relationship.  *See, e.g., Marketic v. U.S. Bank Nat.*

*Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (no fiduciary duty between mortgagor and mortgagee); *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3rd Cir. 1998) (no fiduciary duty between customer and lender because lender is necessarily on the other side of the negotiating table); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 678-79 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 1 (2d Cir. 1992) (no fiduciary relationship between borrower and lender absent extraordinary circumstances).

Here, Plaintiff and Chase are borrower and lender whose relationship is entirely defined by contract.  Plaintiff makes no argument that a routine home loan contract establishes a fiduciary relationship.  Instead, in support of his argument that a fiduciary relationship exists, Plaintiff cites the case of *Dameron v. Tyler*, 155 F.3d 718 (4th Cir. 1998), where the Fourth Circuit held that an express trust is created – and a fiduciary relationship established – "when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party."  *Id.* at 722.  But the Amended Complaint merely alleges that Chase established an escrow account for Chase's own benefit, not to hold funds in trust for the benefit of a third party.  *See* Pl.'s Am. Compl. ¶¶ 107, 149. Therefore, the Court finds that no fiduciary relationship exists between the parties.  Because Plaintiff has failed to state a

claim for breach of fiduciary duty, the Court will grant Chase's Motion to dismiss Count XIII.[5]

### C. EverHome's Motion

Plaintiff brings seven claims (Counts I through VII) against EverHome for violation of 26 U.S.C. § 7434, violation of FCRA, breach of contract, fraud, negligence, and breach of fiduciary duty.  Plaintiff's accuses Alliance (EverHome's predecessor) of failing to properly disburse property taxes from his escrow account, failing to release its lien when the loan was paid off, filing fraudulent information returns with the IRS about the loan, and misreporting his loan account as delinquent with consumer reporting agencies.  EverHome moves to dismiss all claims.  The Court will take each claim in turn.

### 1) 26 U.S.C. § 7434: Counts I and II

Counts I and II allege that EverHome filed two Form 1098 mortgage interest statements that improperly stated that Plaintiff paid property taxes, in violation of 26 U.S.C. § 7434. EverHome first argues that Count I should be dismissed on statute of limitations grounds.  Section 7434© states that an action to enforce liability under § 7434 must be filed within the later of six years after the date of the filing of the fraudulent information return, or one year after the date such fraudulent

---

[5]   In the alternative, Chase argues – and the Court agrees – that Plaintiff's breach of fiduciary duty claim should be dismissed because it is simply a restatement of his contract claim and does not arise out of an independent common law duty.

23

return would have been discovered by exercise of reasonable care. 26 U.S.C. § 7434©.  Here, the tax statements at issue in Count I concern the year 2001, the year in which Alliance serviced Plaintiff's mortgage, and are so dated.  *See* Exs. 11 & 12 to Pl.'s Am. Compl.  Alliance was required to file the statements by January 31, 2002, more than six years before Plaintiff filed his initial Complaint.  *See* 26 C.F.R. § 1.6050H-1T.

Plaintiff attaches to his brief in opposition to EverHome's Motion an exhibit indicating that the tax information statement at issue was "on file" with the IRS on April 2, 2002. Ex. 8 to Pl.'s Reply to Brief in Support of EverHome's Mot. to Dismiss.  Plaintiff points to this exhibit and argues that the tax statement was not filed until April 2, 2002, and that his Complaint, filed April 1, 2008, was within the six-year time limit.  As the Court previously noted, it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Katz,* 332 F. Supp. 2d at 917 n.9.  Moreover, the fact that the tax statement was "on file" with the IRS on April 2, 2002 says nothing about when it was actually filed. Therefore, at this juncture the actual filing date is unknown to the Court.  As a result, the Court feels it would be premature to grant a motion to dismiss on timeliness grounds where the parties have not yet had the opportunity to ascertain, through discovery, the date the allegedly fraudulent information return was filed.

EverHome goes on to argue that both Counts I and II fail to state a claim under 26 U.S.C. § 7434.  Count I alleges that the year 2001 mortgage interest statement filed by Alliance misreported the amount of property taxes paid on Plaintiff's property.  As the Court previously discussed, to create an actionable claim under 26 U.S.C. § 7434 the information return itself must be fraudulent.  *See Bailey*, 1998 WL 185520, at *2-3. In addition, a claim under 26 U.S.C. § 7434 requires proof of deceitfulness or bad faith in connection with filing an information return.  *See Nash*, 2004 WL 3176885, at *6.  EverHome argues that, according to the exhibits that Plaintiff attaches to his Amended Complaint, the 2001 Form 1098 filed by EverHome was indisputably accurate.  The Form 1098, attached as Exhibits 11 and 12, reports that in 2001 Plaintiff paid $5,520.68 in property taxes.  Exs. 11-12 to Pl.'s Am. Compl.  Plaintiff's loan payment history, which he attaches as Exhibits 25 and 26, shows a payment in precisely that amount made by Alliance from Plaintiff's escrow account on July 24, 2001, reducing the balance to $0.  *Id.*, Exs. 25-26.  In other words, Plaintiff's own exhibits demonstrate that the reported amounts in the 2001 Form 1098 filed by EverHome were in fact correct.

In Count II, Plaintiff alleges that EverHome violated 26 U.S.C. § 7434 by not filing Form 1098 statements for 2002 and 2003.  By its terms, however, Section 7434 does not create liability for failing to file an information return; rather, it

applies when an entity makes a "filing" and in the filing submits
"fraudulent" information.  26 U.S.C. § 7434(a).  In addition,
EverHome's failure to file in 2002 and 2003 is consistent with
Plaintiff's allegation that EverHome ceased servicing his
mortgage in July 2001 when he refinanced his loan.  *See* Pl.'s Am.
Compl. ¶ 24.  Therefore, the Court finds that Plaintiff has
failed to state a claim for violation of 26 U.S.C. § 7434, and
will grant EverHome's Motion to Dismiss Counts I and II.

    2) FCRA: Count III

        Count III alleges that EverHome violated FCRA by
misreporting Plaintiff's loan status to consumer reporting
agencies.  To state a claim under 15 U.S.C. § 1681s-2(b),
Plaintiff must allege: (1) that he notified a consumer reporting
agency that he disputed the accuracy of information in his
consumer report; (2) that the consumer reporting agency notified
EverHome of Plaintiff's dispute; and (3) that EverHome failed to
adequately investigate after receiving the notice from the
consumer reporting agency.  Plaintiff, however, fails to allege
in his Amended Complaint that he submitted a dispute to a
consumer reporting agency or that a consumer reporting agency
notified Alliance of any such dispute.  While his brief in
response to EverHome's Motion alleges that he "lodged a dispute
challenging EverHome's reporting in April, 2006 and was finally
informed of a lien not reported by Alliance," Pl.'s Reply to
Brief in Support of EverHome's Mot. to Dismiss at 13, the Court

"may not consider additional allegations when ruling on a motion to dismiss and must consider the facts asserted in the complaint, and the attached exhibits, to be true."  *Davis*, 999 F. Supp. at 813.  Because the Amended Complaint fails to state a FCRA claim against EverHome, the Court will grant EverHome's Motion to Dismiss Count III.

### 3) Breach of Contract: Count IV

Count IV alleges that EverHome breached its mortgage contract with Plaintiff.  EverHome argues that this claim is untimely as Alliance serviced Plaintiff's loan only during 2001, and any breaches of its obligations must have occurred during that time period.  To evade the five-year statute of limitations, Plaintiff argues in his opposition brief that EverHome asserted a lien against 2321 Sawtooth Oak Court in October 2003, less than five years prior to the filing of the initial Complaint.  But even accepting Plaintiff's allegation as true, that allegation is unrelated to the breach of contract claim in his Amended Complaint.  In the Amended Complaint, Plaintiff alleges that Alliance "violated basic escrow [and] other contractual obligations relating to loan servicing, including the timely payment of property taxes."  Pl.'s Am. Compl. ¶ 87.  This allegation refers to contractual obligations created by the mortgage agreement that terminated with the July 2001 refinancing.  Plaintiff's new contention in his opposition brief has nothing to do with this claim.  Therefore, because Plaintiff

fails to allege a breach of contract that occurred within the five-year period prior to April 1, 2008, his contract claim fails, and the Court will grant EverHome's Motion to Dismiss Count IV.

>    4) Fraud: Count V

Count V accuses EverHome of fraud.  EverHome argues that the statute of limitations on this claim has run.  The statute of limitations for fraud is two years, and begins running when the alleged fraud is discovered or should have been discovered by the exercise of reasonable diligence.  Va. Code Ann. §§ 8.01-243 & 8.01-249; *Virginia Imports*, 296 F. Supp. 2d at 699.  EverHome points to exhibits attached to the Amended Complaint as evidence that Plaintiff learned of any alleged fraud in 2001.  Exhibit 7 is an e-mail that Plaintiff received in May 2001 from Nancy Fortune of American Home, which refers to a "problem regarding taxes" that "may negatively impact [Plaintiff's] ability to refinance with [American Home]."  Ex. 7 to Pl.'s Am. Compl.  Exhibit 7A is a detailed letter dated May 30, 2001 from Plaintiff to Alliance in which he alleged that "Alliance had MADE a MISTAKE in releasing/not 'blocking' the non-payment information to the credit reporting agencies."  *Id.*, Ex. 7A (emphasis in original).  Exhibits 9D and 9E are a letter that Plaintiff received from Alliance dated August 29, 2001, providing detailed information about activity in his escrow account.  *Id.*, Exs. 9D-9E.  Finally, Exhibit 10 is a letter dated December 5,

2001 in which Alliance responded to his "recent inquiry" regarding "the status of [his] real estate property taxes" and provided Plaintiff with a check for $120 as reimbursement for penalties in connection with delinquent property taxes that had been paid. *Id.*, Ex. 10. EverHome argues that these documents show that Plaintiff knew, or at the very least should have known through the exercise of reasonable diligence, in 2001 of any purportedly improper activity by Alliance in connection with servicing his loan.

In his opposition to EverHome's Motion, Plaintiff points to post-2001 fraudulent acts as the basis for his claim, including unreleased liens on his property in 2003, "credit prejudicial reporting" in 2001 and 2002, and tax reporting and apparent tax fraud between 2001 and 2003. He then claims that he did not discover these violations until mid-2006, within the two-year time period. Despite his best efforts, Plaintiff cannot amend his fraud claim in his response. Count V is expressly limited to "escrow [and] other contractual obligations relating to loan servicing," Pl.'s Am. Compl. ¶ 91, and there is no disputing that these activities took place in 2001 and that Plaintiff discovered any purported improprieties during 2001 as well. Because the statute of limitations on Plaintiff's fraud claim had run by at least the end of 2003, the claim is untimely, and the Court will grant EverHome's Motion to Dismiss Count V.

### 5) Negligence: Count VI

Count VI alleges that EverHome was negligent when it serviced Plaintiff's loan.  EverHome argues that the negligence claim is untimely, as any negligent conduct could have occurred no later than July 23, 2001, when Alliance stopped servicing the loan.  The statute of limitations for negligence is two years, and begins to run on the date the plaintiff is injured, even if the injury is slight.  Va. Code Ann. §§ 8.01-230, 8.01-243 & 8.01-248; *McHenry*, 448 S.E.2d at 392-93.  As the Court previously discussed, under Virginia law professional malpractice actions are treated as breach of contract actions and therefore fall within the limitations period applicable to contract actions. *Ranney*, 176 Fed. Appx. at 409.  Plaintiff argues that his negligence claim is in fact a professional malpractice action and, as a result, has a five-year statute of limitations.  Even were the Court to accept Plaintiff's assertion and apply a five-year statute of limitations, his Amended Complaint contains no allegations that the clock on his negligence claim should start running at any time other than July 2001.  Therefore, even applying the longer limitations period, the Court finds that his negligence claim is untimely, and will grant EverHome's Motion to Dismiss Count VI.

### 6) Breach of Fiduciary Duty: Count VII

EverHome also moves to dismiss Plaintiff's breach of fiduciary duty claim on timeliness grounds.  A breach of

fiduciary duty claim is governed by a two-year statute of limitations, which begins to run on the date the plaintiff is injured.  Va. Code Ann. §§ 8.01-230 & 8.01-248; *Goldstein*, 72 F. Supp. 2d at 626.  EverHome argues that any breach of fiduciary duty could have occurred no later than July 23, 2001, when Alliance stopped servicing the loan.  While Plaintiff again asserts that the discovery rule should apply pursuant to *Al-Abood ex rel. Al-Abood*, 217 F.3d at 235, the Court reiterates that *Al-Abood* did not authorize the application of the discovery rule even in cases where a fiduciary committed fraud by engaging in self-dealing.  As a result, the statute of limitations on Plaintiff's breach of fiduciary claim expired in July 2003.

Even if the breach of fiduciary duty claim were timely, EverHome also contends that the claim must fail because there was no fiduciary relationship between EverHome and Plaintiff.  As the Court discussed above, the banker-borrower relationship does not, by itself, establish a fiduciary relationship.  *See, e.g., Marketic*, 436 F. Supp. 2d at 855; *Paradise Hotel Corp.*, 842 F.2d at 53; *Nat'l Westminster Bank,* 130 B.R. at 678-79.  Plaintiff provides no argument that a routine home loan contract establishes a fiduciary relationship.  Therefore, the Court finds that no fiduciary relationship exists between the parties. Because Plaintiff has failed to state a claim for breach of fiduciary duty, the Court will grant EverHome's Motion to Dismiss Count VII.

**D. The Key Title Defendants' Motion**

Plaintiff brings eighteen counts (Counts XIV through XXXI) against the Key Title Defendants that raise five types of claims: violation of 26 U.S.C. § 7434, breach of contract, breach of fiduciary duty, negligence, and fraud. All of these counts repeat the same two allegations: that Lazarus made a fraudulent filing with the IRS by not filing a Form 1099-S showing Plaintiff's proceeds from the home sale, and that Lazarus failed to require Henry Osborne to forfeit the $10,000 earnest money deposit provided at the signing of the Sales Contract. The Key Title Defendants move to dismiss all counts, or in the alternative for summary judgment on all counts. The Court will address each claim in turn.

### 1) 26 U.S.C. § 7434: Counts XIV and XIX

In Counts XIV and XIX, Plaintiff alleges that Key Title and Lazarus, respectively, injured Plaintiff by failing to file a Form 1099-S with the IRS in connection with the sale of 2321 Sawtooth Oak Court, in violation of 26 U.S.C. § 7434. As the Court previously discussed, under 26 U.S.C. § 7434 a person may bring a civil action against another who "willfully files a fraudulent information return with respect to payments reported to be made to any other person." 26 U.S.C. § 7434. To create an actionable claim under 26 U.S.C. § 7434, the information return itself must be fraudulent. *See Bailey*, 1998 WL 185520, at *2-3. In addition, a claim under 26 U.S.C. § 7434 requires proof of

32

deceitfulness or bad faith in connection with filing an information return.  *See Nash*, 2004 WL 3176885, at *6.  Here, Plaintiff explicitly states in his Amended Complaint that "no such filing ever took place or was even attempted by Lazarus or Key Title."  Pl.'s Am. Compl. ¶¶ 161, 191.  Because Plaintiff does not allege a filing, he fails to state a claim under 26 U.S.C. ¶ 7434.  The Court will therefore grant the Key Title Defendants' Motion to Dismiss Counts XIV and XIX.

<u>2) Breach of contract: Counts XV, XX, XXIV, & XXVIII</u>

Plaintiff alleges that the Key Title Defendants somehow breached a contract by failing to require Henry Osborne to forfeit his $10,000 earnest money deposit when the closing did not proceed on April 25, 2008.  The Key Title Defendants argue that Plaintiff's claims fail because he has not identified an actual contract between the parties or how that contract was breached.  Under Virginia law, a cause of action for breach of contract requires "the existence of a duly executed and enforceable agreement; performance or offers to perform by plaintiffs; that defendants failed to perform; that the breaches caused actual damages; and that those damages are recoverable under Virginia law."  *Johnson*, 2008 WL 851083, at *6-7 (citing *Carley Capital Group*, 709 F. Supp. at 1396).  Here, the Amended Complaint alleges that Key Title and Plaintiff "entered into written agreements on or about April 3, 2003, and again later in 2003, upon the selection of Key and Lazarus to act as (I) the

33

settlement agent for the home sale closing, and (b) as attorney-
in-fact as well as attorney-at-law, under express – if
illegitimate – Power of Attorney authority or otherwise."  Pl.'s
Am. Compl. ¶ 153.  While Plaintiff does not identify a specific
contract, the April 3, 2003 date appears to refer to the Sales
Contract between Plaintiff and the Osbornes.  To the extent
Plaintiff is relying on the Sales Contract as the basis for a
contractual relationship between himself and Key Title, the mere
designation of Key Title as settlement agent in that contract
does not create a contractual relationship between Key Title and
Plaintiff.

        In addition, Plaintiff alleges that a contractual
relationship exists because Lazarus had power of attorney.
Plaintiff does not attach a document to the Amended Complaint
showing the grant of that power of attorney, and does not outline
what authority the power of attorney grants or does not grant.
Plaintiff also alleges that the power of attorney was
illegitimate.  The Court does not see how a power of attorney
that Plaintiff himself asserts is illegitimate can serve as the
basis for a breach of contract claim.  Therefore, the Court finds
that Plaintiff has failed to allege the existence of an
enforceable written contract between the parties.

        The Key Title Defendants further argue that, if any
contractual relationship does exist between the parties, it is an
implied, unwritten contract that carries a three-year statute of

34

limitations.  *See* Va. Code Ann. § 8.01-246(4); *see also Laios*,
2008 WL 2741158, at *2.  Here, all transactions relating to the
sale of 2321 Sawtooth Oak Court occurred in 2003.  Therefore,
Plaintiff's breach of contract claims, filed April 1, 2008, are
untimely.  For these reasons, the Court will grant the Key Title
Defendants' Motion to Dismiss Counts XV, XX, XXIV, and XXVIII.

### 3) Fraud: Counts XVI, XXI, XXV, and XXIX

The fraud claims against the Key Title Defendants
center around the failure to require the forfeiture of the
$10,000 earnest money deposit.  The Key Title Defendants move to
dismiss the fraud claims for several reasons, including the fact
that the Amended Complaint does not plead fraud with
particularity.  "Under Federal Rule of Civil Procedure 9(b), a
claim of fraud must allege with particularity a false
representation by a defendant of a material fact with the intent
to mislead, and that the plaintiff reasonably relied on the
representations to his detriment."  *Goldstein*, 72 F. Supp. 2d at
627 (citing *Sneed v. American Bank Stationary, Co.,* 764 F. Supp.
65, 67-68 (W.D. Va. 1991)).  "The minimum type of circumstances
that must be pleaded include the time, place, content, and
identity of authorship of any alleged misrepresentation."  *Id.*
(citing *Riley v. Murdock*, 828 F. Supp. 1215, 1224 (E.D.N.C.
1993); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28
(2d Cir. 1994); *Tuchman v. DSC Communications Corp.*, 14 F.3d
1061, 1068 (5th Cir. 1994); *Katz v. Household International,*

35

*Inc.*, 36 F.3d 670, 675 (7th Cir. 1994)).  "Conclusory allegations
do not satisfy the requirements of the rule."  *Id.* (citing
*Commercial Property Investments, Inc. v. Quality Inns
International, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

Here, Plaintiff has failed to meet this standard.  He
makes only general statements about how Key Title and Lazarus
were "legally obligated to require forfeiture of the earnest
money deposits by the buyer" and how they failed to meet that
obligation.  Pl.'s Am. Compl. ¶¶ 173-75.  Time, place, and
anything more than conclusory allegations of content are absent.
Consequently, the Court finds that Plaintiff has failed to state
any claims for fraud against the Key Title Defendants, and will
grant the Key Title Defendants' Motion to Dismiss Counts XVI,
XXI, XXV, and XXIX.

### 4) Negligence: Counts XVII, XXII, XXVI, and XXX

Plaintiff's negligence claims also arise out of his
belief that he was entitled to the forfeiture of the $10,000
earnest money deposit.  The Key Title Defendants argue that, even
applying the rule that professional malpractice actions are
treated as breach of contract actions with the limitations period
that applies to contract actions, Plaintiff's negligence claims
are still untimely.  As the Court found in Part III.D.2,
Plaintiff has failed to allege the existence of an enforceable
written contract between Plaintiff and the Key Title Defendants.
As a result, if any contractual relationship does exist, it is an

36

implied oral contract that carries a three-year statute of limitations that began to run at the time of the breach. *See* Va. Code Ann. §§ 8.01-230 & 8.01-246(4).  Based on Plaintiff's allegations, any breach occurred in 2003, so the three-year statute of limitations had run by 2006.  Because the Complaint was filed in 2008, these claims are untimely, and the Court will grant the Key Title Defendants' Motion to Dismiss Counts XVII, XXII, XXVI, and XXX.

> ### 5) Breach of Fiduciary Duty: Counts XVIII, XXIII, XXVII, and XXXI

Plaintiff's breach of fiduciary claims repeat almost verbatim the allegations from his breach of contract, fraud, and negligence counts.  The Key Title Defendants move to dismiss Plaintiff's breach of fiduciary duty claims on timeliness grounds.  While Plaintiff again asserts that the discovery rule should apply pursuant to *Al-Abood ex rel. Al-Abood*, 217 F.3d at 235, the Court reiterates that *Al-Abood* did not authorize the application of the discovery rule in cases where a fiduciary committed fraud by engaging in self-dealing.  Based on Plaintiff's allegations, any breach of fiduciary duty by the Key Title Defendants occurred in 2003, so the two-year statute of limitations for breaches of fiduciary duty had run by 2005. Because these claims are untimely, the Court will grant the Key Title Defendants' Motion to Dismiss Counts XVIII, XXIII, XXVII, and XXXI.

**IV.   Conclusion**

For these reasons, the Court will grant in part and deny in part the Kee Defendants' Motion, grant Chase's Motion, grant EverHome's Motion, and grant the Key Title Defendants' Motion.

An appropriate Order will issue.


September 3, 2008

Alexandria, Virginia

_____/s/_____
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE