IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRUD ROSSMANN,                    )
                                  )
        Plaintiff,                )
                                  )
        v.                        )        1:08cv316 (JCC)
                                  )
RONALD H. LAZARUS, ESQ.,          )
et al.,                           )
                                  )
        Defendants.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a motion by defendant Roslyn National Mortgage Corporation, seeking dismissal for failure to state a claim, or, in the alternative, summary judgment.  For the following reasons, the Court will **grant** the motion.

**I. Background**

This lawsuit arises out of the 2003 sale of Plaintiff Brud Rossmann's[1] ("Plaintiff") home in Vienna, Virginia. Plaintiff purchased this property, located at 2321 Sawtooth Oak Court (the "Property"), on September 8, 2000.  The property was

_____

[1] The Court notes that while Plaintiff has filed this lawsuit pro se, he is an attorney licensed to practice law in the state of New York.  Consequently, the Court will hold Plaintiff's pleadings and briefs to the same standard it would if he were represented by counsel, and not provide him the benefit of the doubt that is normally afforded a pro se plaintiff not versed in the practice of law.

1

secured by two mortgage loans from Defendant Roslyn National Mortgage Corporation ("Roslyn National").  On or about February 1, 2001, Defendant EverHome Mortgage Company ("EverHome"), f/k/a Alliance Mortgage Company ("Alliance"), purchased and began servicing the primary mortgage loan.  The other loan, a $78,537 second-lien position home equity loan, was purchased by Defendants Chase Manhattan Bank USA, N.A., Chase Manhattan Mortgage Corporation, and Chase Home Finance LLC (collectively, "Chase") on February 15, 2001.  Plaintiff later decided to refinance the primary mortgage loan, and on July 23, 2001, closed on a new mortgage loan in the amount of $420,000, payable to Defendant American Home Mortgage Corporation ("American Home"). After Plaintiff closed on the new loan, EverHome ceased servicing the old loan.

In September 2001, Defendant Astoria Federal Savings and Loan Association ("Astoria") purchased and began servicing the July 2001 loan.  Around February 2003, Plaintiff became delinquent in his payments on the loan.  On March 10, 2003, Astoria referred Plaintiff's file to Virginia counsel and requested that the substitute trustee conduct a foreclosure sale. A foreclosure sale was set to take place on April 7, 2003, but was cancelled on April 1, 2003.  The debt owed Astoria under the July 2001 loan was paid in full on June 1, 2003.

On October 17, 2002, prior to becoming delinquent in his payments on the July 2001 loan, Plaintiff engaged Defendant Dorothy Kee ("Kee"), an employee of Defendant Re/Max Elite Properties, Inc. ("Re/Max Elite"),[2] as the listing agent for the sale of the Property.  On that date, Plaintiff's home was listed at $624,927.  A short time later, in January 2003, Plaintiff was incarcerated and it became necessary to handle his real estate affairs through a power of attorney.  On January 26, 2003, Plaintiff granted power of attorney to Theresa Amato, and on March 28, 2003, Plaintiff granted power of attorney to his uncle, Jeff Jones ("Jones").  The power of attorney gave Jones the ability to conduct Plaintiff's affairs regarding the sale of the Property.

On April 3, 2003, Plaintiff and Defendants Henry C. Osborne, Jr. and Nanci A. Osborne ("the Osbornes") entered into a contract for the sale of the Property (the "Sales Contract") in which the Osbornes agreed to purchase the property for $565,000. To secure their purchase, the Osbornes placed a $10,000 earnest money deposit with Defendant Jobin Realty ("Jobin").  Due to Plaintiff's incarceration, Jones signed the Sales Contract on Plaintiff's behalf.  The Sales Contract specified both April 25, 2003 and April 30, 2003 as closing dates.

---

[2] Re/Max Elite was purchased by Defendant Re/Max Allegiance in August of 2003.

In early April 2003, Defendant Old Dominion Settlements, Inc., trading under the name Key Title ("Key Title"), received the Sales Contract in order to perform the closing for the Property.  Key Title also received a copy of the Osbornes' $10,000 deposit and a copy of the document granting power of attorney to Jones.  Defendant Ronald H. Lazarus, Esq., ("Lazarus") a principal and employee of Key Title and a partner with Defendant Cregger and Lazarus, LLP ("Cregger and Lazarus") contacted Jones and informed him that the power of attorney was not notarized and that, as a result, it could not be used for closing.

On April 16, 2003, Key Title received the title abstract that disclosed four outstanding liens against the Property, two of which presented title defects: an old "unreleased" EverHome loan that should have been paid and released after the July 2001 refinancing, and a lien on the property to secure the payment to Mercedes Benz of a car loan for Plaintiff's Audi.  Because these title defects were not resolved by either April 25 or April 30 – the closing dates listed in the Sales Contract – the closing could not go forward.

On May 17, 2003, Lazarus met with Plaintiff at the Fairfax County Detention Center and had Plaintiff sign a specific power of attorney authorizing Jones to sell Plaintiff's home, which was then notarized.  On May 20, 2003, EverHome acknowledged

that the unreleased loan had been paid off and agreed in writing
to release their lien.  The next day, the Osbornes agreed to
extend the Sales Contract deadline to May 28, 2008 to resolve any
remaining title issues.  After the Audi was sold, the Osbornes
closed on the Property.  On June 4, 2003, Lazarus had a package
delivered to Plaintiff informing him that the closing was
complete.

On April 1, 2008, Plaintiff filed a Complaint against
16 different individuals and entities involved in the sale of his
home.  On May 9, 2008, Plaintiff filed an Amended Complaint that
added three more defendants.  In total, Plaintiff has sued the
following defendants: Lazarus, Key Title, Cregger & Lazarus, Kee,
Re/Max Elite, Re/Max Allegiance, Jobin, the Osbornes, Everhome,
Chase, Astoria, American Home, Roslyn National, and ABC Insurance
Company (collectively, "Defendants").  The Amended Complaint
totals 138 pages and 63 counts.

On September 5, 2008, Defendant Roslyn filed a Motion
to Dismiss.  Plaintiff filed a Memorandum in Opposition on
September 25, 2008 and Defendant Roslyn replied on October 1,
2008.  This matter is currently before the Court.

## II. Standard of Review

### A.    Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal

sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (internal citations omitted) (statute of limitations defense is an affirmative defense that

6

merits a dismissal pursuant Rule 12(b)(6)); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1357 ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).")

**B.  Summary Judgment**

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted).  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

Plaintiff brings four counts against Roslyn:  Counts LX (breach of contract); LXI (fraud); LXII (negligence); and LXIII (breach of fiduciary duty).  Plaintiff alleges that Roslyn failed to properly transfer and record the sale of his first purchase money mortgage.  Compl. at ¶¶ 535-38.  He  also alleges that Roslyn, as an agent or partner of Everhome/Alliance, failed to properly disburse property taxes from his escrow account, failed to release its lien when the loan was paid off, filed fraudulent information returns with the IRS, and misreported his loan account as delinquent with consumer reporting agencies.  *Id.* at ¶ 545.  The Court will address each of the counts in turn.

### A.   Breach of Contract: Count LX

Count LX alleges that Roslyn breached its mortgage contract with Plaintiff.  The statute of limitations for breach of a written contract is five years, and the cause of action accrues and the limitations period commences on the date of the alleged breach.  Va. Code Ann. §§ 8.01-230 & 8.01-246(2); *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).  The statute of limitations for breach of an oral contract or implied contractual duties is three years.  Va. Code Ann. § 8.01-246(4); *see also Laios v. Wasylik*, __ F. Supp. 2d __, 2008 WL 2741158, at *2 (E.D. Va. Apr. 2, 2008).

8

Roslyn argues that this claim is untimely because it only serviced Plaintiff's loan until September 2000, when it "terminated its mortgage operations and sold and transferred its assets to American Home [Mortgage]." Def.'s Mot. to Dismiss at 4.  Thus, any breaches must have occurred prior to that time, more than five years before the filing of Plaintiff's Complaint.

Plaintiff argues that Roslyn remained responsible under the mortgage contract after 2000 because it did not properly transfer the loan to Alliance.  Plaintiff also asserts that Roslyn breached the contract by failing to release the lien on the Property until June 18, 2003, even though the loan was paid on July 23, 2001.  Pl.'s Mem. in Opp'n at 12.

The Court notes that the mortgage in dispute was refinanced on July 23, 2001 and Alliance stopped servicing the loan on that date.  Even if Roslyn and Alliance acted in a principal/agent relationship or as partners, as Plaintiff alleges, the breach of contract claim is untimely, as any relevant conduct must have occurred on or before July 23, 2001. This date is well outside of the two-year statute of limitations. The Court will grant Roslyn's motion to dismiss Count LX.

**B.   Fraud: Count LXI**

Count LXI alleges that Roslyn committed fraud when it serviced Plaintiff's loan.  In Virginia, the statue of limitations for fraud is two years, and begins running when the

alleged fraud is discovered or should have been discovered by the exercise of reasonable diligence.  Va. Code Ann. §§ 8.01-243 & 8.01-249; *Va. Imports, Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691, 699 (E.D. Va. 2003).  The discovery rule applicable to fraud claims places the burden on the plaintiff "to prove that he acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action."  *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962).  To comply with the requirement of due diligence, the plaintiff must use "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances."  *Id.*

Roslyn contends that the statute of limitations on the fraud claims against them began to run "in 2001" when "Plaintiff became aware of inaccuracies in reporting and servicing . . . or at least [] should have become aware of them through reasonable diligence."  Def.'s Mot. to Dismiss at 6.  Roslyn bases this argument on the fact that "the Exhibits indicate that in 2001 American Home and Alliance informed Plaintiff about mistakes in the handling of Plaintiff's escrow account."  *Id.* at 6-7 (citing Compl. at Ex. 7[3]).  The Court notes that Exhibits 9D, 9E, and 10

---

[3] Exhibit 7 is an e-mail that Plaintiff received in May 2001 from Nancy Fortune of American Home, which refers to a "problem regarding taxes" that "may negatively impact [Plaintiff's] ability to refinance with [American Home]."

also support this assertion.  *See* Compl. at Ex. 9D-E,[4] 10.[5]

Roslyn further notes that "[i]n 2001, Plaintiff threatened to sue

Alliance after he became aware of these mistakes."  *Id.* at 7

(citing Compl. at 7A[6]).  Thus, Roslyn submits that Plaintiff was

required to file his fraud claim by 2003.

Plaintiff points to other, post-2001 fraudulent acts as

the basis for his claim, namely Roslyn's failure to release a

lien from the Property after the first mortgage was paid in full.

Compl. at ¶ 552.  According to Plaintiff, the offending lien was

released on July 19, 2003.  Pl.'s Mem. in Opp'n at 8 and Ex. 3.

Plaintiff failed to allege why he did not and could not have,

with reasonable diligence, discovered these acts before April 1,

2006, two years before he filed the Complaint.

Roslyn also argues that Plaintiff failed to plead fraud

with the particularity required.  "Under Federal Rule of Civil

Procedure 9(b), a claim of fraud must allege with particularity a

false representation by a defendant of a material fact with the

intent to mislead, and that the plaintiff reasonably relied on

---

[4] Exhibits 9D and 9E are a letter that Plaintiff received from Alliance dated August 29, 2001, providing detailed information about activity in his escrow account.

[5] Exhibit 10 is a letter dated December 5, 2001 in which Alliance responded to his "recent inquiry" regarding "the status of [his] real estate property taxes" and provided Plaintiff with a check for $120 as reimbursement for penalties in connection with delinquent property taxes that had been paid.

[6] Exhibit 7A is a letter from Plaintiff to Alliance dated May 30, 2001 in which Plaintiff argued that "Alliance had MADE a MISTAKE in releasing/not 'blocking' the non-payment information to the credit reporting agencies." (emphasis in original).

11

the representations to his detriment." *Goldstein*, 72 F. Supp. 2d at 627 (citing *Sneed v. Am. Bank Stationary Co.,* 764 F. Supp. 65, 67-68 (W.D. Va. 1991)).  "The minimum type of circumstances that must be pleaded include the time, place, content, and identity of authorship of any alleged misrepresentation."  *Id.* (citations omitted).

Plaintiff has failed to meet this standard.  He makes only general statements that Roslyn committed fraud "in the continuing assertion of an unlawful lien and unlawful tax reporting," Compl. at ¶ 552, and because it "had good reason to know from 2001 onward that its servicing and reporting [of the loan] were mistaken and yet it persisted," *id*. at ¶ 556.  Time, place, and anything more than conclusory allegations of content are absent.  In addition, Plaintiff's claim falls outside the two year statute of limitations, even applying the discovery rule. Plaintiff has failed to state a claim for fraud against Roslyn and the Court will grant Roslyn's motion to dismiss Count LXI.

### C.  **Negligence: Count LXII**

Count LXII alleges that Roslyn was negligent when it serviced Plaintiff's loan.  The statute of limitations for negligence is two years, and begins to run on the date the plaintiff is injured, even if the injury is slight.  Va. Code Ann. §§ 8.01-230, 8.01-243 & 8.01-248; *McHenry*, 448 S.E.2d at 392-93.  However, under Virginia law, professional malpractice

actions are treated as breach of contract actions and therefore
fall within the limitations period applicable to contract
actions. *Ranney v. Nelson*, 176 Fed. Appx. 405, 409 (4th Cir.
2006); *see also Va. Milit. Inst. v. King*, 232 S.E.2d 895, 899-900
(Va. 1977) (finding that action for the negligence of an
architect, while sounding in tort, was an action for breach of
contract governed by the statute of limitations applicable to
contracts); *Oleyar v. Kerr*, 225 S.E.2d 398, 400 (Va. 1976)
(reaching the same conclusion as *King* in a negligence action
against an attorney).  The statute of limitations for breach of a
written contract is five years.  The cause of action accrues and
the limitations period commences on the date of the alleged
breach.  Va. Code Ann. §§ 8.01-230 & 8.01-246(2); *Arrington v.
Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).  The
statute of limitations for breach of an oral contract or implied
contractual duties is three years.  Va. Code Ann. § 8.01-246(4);
*see also Laios v. Wasylik*, __ F. Supp. 2d __, 2008 WL 2741158, at
*2 (E.D. Va. Apr. 2, 2008).

     Roslyn argues that the negligence claim is untimely, as
any negligent conduct could have occurred no later than September
2000, when Roslyn sold its mortgage operations and stopped
servicing the loan.  The Court notes that the mortgage in dispute
was refinanced on July 23, 2001, and Alliance stopped servicing
the loan on that date.  Even if Roslyn was an agent or partner of

13

Alliance, Plaintiff's negligence claim is untimely, as any negligent conduct could not have occurred after July 23, 2001. This date falls outside of the five-year statute of limitations.

In addition, the Court notes that Plaintiff's negligence claim simply alleges negligent performance of contractual duties. Because a tort action cannot be based solely on a negligent breach of contract, Plaintiff has failed to state a negligence claim. *See Richmond Metro.*, 507 S.E.2d at 347; *see also Umstead v. Chase Manhattan Mortg. Corp.*, 2005 WL 2233554, at *4 (W.D. Va. Sept. 13, 2005). For these reasons, the Court will grant Roslyn's Motion to Dismiss Count LXII.

### D.   Breach of Fiduciary Duty: Count LXIII

Count LXIII alleges that Roslyn breached its fiduciary duties to Plaintiff when it serviced Plaintiff's loan. A breach of fiduciary duty claim is governed by a two-year statute of limitations, which begins to run on the date the plaintiff is injured. Va. Code Ann. §§ 8.01-230 & 8.01-248; *Goldstein*, 72 F. Supp. 2d at 626.

Plaintiff argues that the discovery rule should apply to these claims based on the Fourth Circuit's decision in *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 235 (4th Cir. 2000), where the Court held that a fiduciary that engages in self-dealing creates a presumption of fraud. *Id.* The discovery rule places the burden on the plaintiff "to prove that he acted

14

with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action." *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962).  However, this Court does not read *Al-Abood* as applying the discovery rule to breach of fiduciary duty claims that happen to create a presumption of fraud. Without clearer direction from the Fourth Circuit or the Virginia courts, this Court does not believe that it should contradict Virginia statutory law and apply the discovery rule to breach of fiduciary duty claims.

Roslyn argues that this claim is untimely, as any breach must have occurred by September 2000, when Roslyn sold its mortgage operations and stopped servicing the loan.  The mortgage in dispute was refinanced on July 23, 2001 and Alliance stopped servicing the loan on that date.  Therefore, even if Roslyn was an agent or partner of Alliance, Plaintiff's breach of fiduciary duty claim is untimely, as any relevant conduct could not have occurred after July 23, 2001.  This date falls outside of the two-year statute of limitations and the five-year statute of limitations that Plaintiff seeks.

Even if the breach of fiduciary duty claim were timely, Roslyn also contends that the claim must fail because there was no fiduciary relationship between Roslyn and Plaintiff.  A fiduciary relationship exists where "special confidence has been

reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007) (citations omitted).  Fiduciary duties can arise either from a contractual provision or through a common law duty.  *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).  Virginia courts recognize fiduciary relationships between an attorney and client, an agent and principal, a trustee and *cestui que* trust, parent and child, siblings, and caretaker and invalid.  *Johnson v. D & D Home Loans Corp.*, 2005 WL 850870, at *9 (E.D. Va. Jan. 23, 2008) (citations omitted).  The banker-borrower relationship, however, does not, by itself, establish a fiduciary relationship.  *See, e.g., Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (no fiduciary duty between mortgagor and mortgagee); *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3rd Cir. 1998) (no fiduciary duty between customer and lender because lender is necessarily on the other side of the negotiating table); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 678-79 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 1 (2d Cir. 1992) (no fiduciary relationship between borrower and lender absent extraordinary circumstances).

Here, Plaintiff and Roslyn are borrower and lender whose relationship is entirely defined by contract.  Plaintiff

makes no argument that a routine home loan contract establishes a fiduciary relationship.  Instead, in support of his argument that a fiduciary relationship exists, Plaintiff cites the case of *Dameron v. Tyler*, 155 F.3d 718 (4th Cir. 1998), where the Fourth Circuit held that an express trust is created – and a fiduciary relationship established – "when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party."  *Id.* at 722.  Plaintiff provides no argument that a routine home loan contract establishes a fiduciary relationship.  The Court finds that no fiduciary relationship exists between the parties.  The Court will grant Roslyn's Motion to dismiss Count LXIII.

### IV.  Conclusion

        For these reasons, the Court will **grant** defendant's motion.

_____An appropriate Order will issue.___


October 15, 2008            _____/s/_____
Alexandria, Virginia             James C. Cacheris
                          UNITED STATES DISTRICT COURT JUDGE


17