IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRUD ROSSMANN,                    )
                                  )
        Plaintiff,                )
                                  )
            v.                    )        1:08cv316 (JCC)
                                  )
RONALD H. LAZARUS, ESQ.,          )
et al.,                           )
                                  )
        Defendants.               )

# M E M O R A N D U M   O P I N I O N

This matter is before the Court on defendant American Home Mortgage Corporation's Motion to Dismiss under Rule 12(b) for failure to state a claim.  For the following reasons, the Court will grant the motion and dismiss all claims against Defendant American Home Mortgage Corporation (Counts LIV - LIX).

## I. Background

This lawsuit arises out of the 2003 sale of Plaintiff Brud Rossmann's[1] ("Plaintiff") home in Vienna, Virginia.  Plaintiff purchased this property, located at 2321 Sawtooth Oak Court, on September 8, 2000.  The property was secured by two

---

[1] The Court notes that while Plaintiff has filed this lawsuit pro se, he is an attorney licensed to practice law in the state of New York.  Consequently, the Court will hold Plaintiff's pleadings and briefs to the same standard it would if he were represented by counsel and will not provide him the benefit of the doubt that is normally afforded a pro se plaintiff not versed in the practice of law.

mortgage loans from Defendant Roslyn National Mortgage Corporation ("Roslyn").  Roslyn was later acquired by Defendant American Home Mortgage Corporation ("American Home").  On or about February 1, 2001, Defendant EverHome Mortgage Company ("EverHome"), f/k/a Alliance Mortgage Company ("Alliance"), purchased and began servicing the primary mortgage loan.  The other loan, a $78,537 second-lien position home equity loan, was purchased by Defendants Chase Manhattan Bank USA, N.A., Chase Manhattan Mortgage Corporation, and Chase Home Finance LLC (collectively, "Chase") on February 15, 2001.  Plaintiff later decided to refinance the primary mortgage loan; on July 23, 2001, he closed on a new mortgage loan in the amount of $420,000, payable to Defendant American Home.  After Plaintiff closed on the new loan, EverHome ceased servicing the old loan.

In September 2001, Defendant Astoria Federal Savings and Loan Association ("Astoria") purchased and began servicing the July 2001 loan.  Around February 2003, Plaintiff became delinquent in his payments on the loan.  On March 10, 2003, Astoria referred Plaintiff's file to Virginia counsel and requested that the substitute trustee conduct a foreclosure sale of 2321 Sawtooth Oak Court.  A foreclosure sale was set to take place on April 7, 2003, but was cancelled on April 1, 2003.  The debt owed Astoria under the July 2001 loan was paid in full on

June 1, 2003, the date on which all of Astoria's contact with Plaintiff ended.

On October 17, 2002, prior to becoming delinquent in his payments on the July 2001 loan, Plaintiff engaged the services of Defendant Dorothy Kee ("Kee"), an employee of Defendant Re/Max Elite Properties, Inc. ("Re/Max Elite"),[2] to be the listing agent for the sale of 2321 Sawtooth Oak Court.  On that date, Plaintiff's home was listed at $624,927.  A short time later, in January 2003, Plaintiff was incarcerated.  As a result, it became necessary to handle his real estate affairs through a power of attorney.  On January 26, 2003, Plaintiff granted power of attorney to Theresa Amato, and on March 28, 2003, Plaintiff granted power of attorney to his uncle, Jeff Jones ("Jones").  The power of attorney gave Jones the ability to conduct Plaintiff's affairs in relation to the sale of 2321 Sawtooth Oak Court.

On April 3, 2003, Plaintiff and Defendants Henry C. Osborne, Jr. and Nanci A. Osborne ("the Osbornes") entered into a contract for the sale of 2321 Sawtooth Oak Court (the "Sales Contract"), in which the Osbornes agreed to purchase the property for $565,000.  To secure their purchase, the Osbornes placed a $10,000 earnest money deposit with Defendant Jobin Realty ("Jobin").  Due to Plaintiff's incarceration, Jones signed the

_____

[2] Re/Max Elite was purchased by Defendant Re/Max Allegiance in August of 2003.

Sales Contract on Plaintiff's behalf.  The Sales Contract specified both April 25, 2003 and April 30, 2003 as closing dates.

In early April 2003, Defendant Old Dominion Settlements, Inc., trading under the name Key Title ("Key Title"), received the Sales Contract in order to perform the closing for 2321 Sawtooth Oak Court.  Key Title also received a copy of the Osbornes' $10,000 deposit and a copy of the document granting power of attorney to Jones.  Defendant Ronald H. Lazarus, Esq., ("Lazarus") a principal and employee of Key Title and a partner with Defendant Cregger and Lazarus, LLP, ("Cregger and Lazarus") contacted Jones and informed him that the power of attorney was not notarized and that, as a result, it could not be used for closing.  On April 16, 2003, Key Title received the title abstract that disclosed four outstanding liens against 2321 Sawtooth Oak Court, two of which presented title defects: an old "unreleased" EverHome loan that should have been paid and released after the July 2001 refinancing, and a lien on the property to secure the payment to Mercedes Benz of a car loan for Plaintiff's Audi.  Because these title defects were not resolved by either April 25 or April 30 – the closing dates listed in the Sales Contract – the closing could not go forward.

On May 17, 2003, Lazarus met with Plaintiff at the Fairfax County Detention Center and had Plaintiff sign a specific

4

power of attorney authorizing Jones to sell Plaintiff's home, which was then notarized.  On May 20, 2003, EverHome acknowledged that the unreleased loan had been paid off and agreed in writing to release their lien.  The next day, the Osbornes agreed to extend the Sales Contract deadline to May 28, 2003 to resolve any remaining title issues.  After the Audi was finally sold, the Osbornes closed on 2321 Sawtooth Oak Court.  On June 4, 2003, Lazarus had a package delivered to Plaintiff informing him that the closing was complete.

On April 1, 2008, Plaintiff filed a complaint against 16 different individuals and entities that were involved in the sale of his home ("Complaint").  On May 9, 2008, Plaintiff filed an Amended Complaint ("Amended Complaint") that added three more defendants, including American Home.  In total, Plaintiff has sued the following defendants: Lazarus, Key Title, Cregger & Lazarus, Kee, Re/Max Elite, Re/Max Allegiance, Jobin, the Osbornes, Everhome, Chase, Astoria, American Home, Roslyn National, and ABC Insurance Company (collectively, "Defendants").  The Amended Complaint totals 138 pages and 63 counts.

On December 4, 2008, Defendant American Home filed a Motion to Dismiss.  Plaintiff filed an opposition on December 23, 2008 and American Home replied on December 31, 2008.  This matter is currently before the Court.

5

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).  Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  However, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston-Salem, N.C.*, 85

6

F.3d 178, 181 (4th Cir. 1996) (internal citations omitted) (statute of limitations defense is an affirmative defense that merits a dismissal pursuant Rule 12(b)(6)); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1357 ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

### III. Analysis

Plaintiff brings five counts against American Home: Counts LIV and LV (fraudulent filing of tax information returns in violation of 26 U.S.C. § 7434); LVI (breach of contract); LVII (fraud); LVIII (negligence); and, LIX (breach of fiduciary duty).  The counts relate to the following allegations: that American Home filed multiple 1098 forms with the IRS containing fraudulent facts pertaining to Plaintiff's 2001 loan payments and violated certain escrow and loan servicing requirements.  *See, e.g.*, Compl. at ¶¶ 470, 521.  The Court will address each count in turn.

### A.   Violations of 26 U.S.C. § 7434: Counts LIV and LV

Plaintiff alleges that American Home violated 26 U.S.C. § 7434, which prohibits the filing of fraudulent "information

returns."  Plaintiff submits that the two 1098 forms filed by American Home listed Plaintiff as the interest "payee" rather than the "payor," Compl. at ¶¶ 472, 484, and reported five months of interest payments, although American Home only held the loan in question for three months.  *Id.* at ¶¶ 470, 482.  Finally, Plaintiff submits that American Home made "mistatements as to per-period interest payments; misreported or absent account numbers . . . ; and related information."  *Id.* at ¶¶ 478, 490. The Complaint does not allege when these actions occurred, but does state that they relate to 1098 forms for fiscal year 2001. *Id.* at ¶¶ 470, 482.

The statute of limitations for claims brought under 26 U.S.C. § 7434 is the *later* of: (1) "6 years after the date of the filing of the fraudulent information return, or (2) 1 year after the date such fraudulent information return would have been discovered by exercise of reasonable care."  American Home argues for dismissal of this claim of statute of limitations grounds.

Plaintiff asserts that American Home did not file the 1098 forms at issue until May 10, 2002 and May 23, 2002 and thus the six-year statute of limitations did not expire until May 10 and May 23, 2008.[3]  Plaintiff filed his Amended Complaint on May 9, 2008.  American Home failed to respond to Plaintiff's argument

---

[3] Plaintiff does not allege or argue that he did not or could not have discovered the fraudulent information returns by May 9, 2007, one year before he filed the Amended Complaint.

regarding these filing dates, even though Plaintiff only supported them with unrelated exhibits that were attached to the Amended Complaint.  Neither party has submitted the 1098 forms at issue.  The Court does not have sufficient information to dismiss these claims on statute of limitations grounds at this time.

American Home also argues for the dismissal of these claims because 1098 forms do not fall within the purview of 26 U.S.C. § 7434.  Section 7434 defines "information returns" as "any statement described in section 6724 (d)(1)(A)."  26 U.S.C. § 7434(f).  Section 6724(d)(1)(A) defines nine types of information returns, but does not include returns relating to mortgage interest, which are included in § 6724(d)(1)(B). 26 U.S.C. § 6724(d)(1)(B)(iv) (covering "any return required by . . . § 6050H(a) (relating to mortgage interest received in trade or business from individuals")).

Section 6050H(a), in turn, provides as follows:

(a) Mortgage interest of $600 or more. – Any person –
   (1)  who is engaged in a trade or business, and
   (2)  who, in the course of such trade or business, receives from any individual interest aggregating $600 or more for any calendar year on any mortgage,
shall make the return described in subsection (b) with respect to each individual from whom such interest was received at such time as the Secretary may by regulations prescribe.

26 U.S.C. § 6050H(a).  This text is substantially repeated in the first paragraph of the "Instructions for Payer/Borrower" portion

of Form 1098 and the components of Form 1098 match identically with those specified at § 6050H(b).  Thus, it is clear that Form 1098 is the IRS form promulgated pursuant to Sections 6050H(a) and referenced in § 6724(d)(1)(B)(iii).

Section 6724(d)(1)(A)(iv) is the only subsection covered by 26 U.S.C. § 7434 that relates to interest payments. It provides that "[f]or purposes of this part . . . [t]he term "information return" means [] any statement of the amount of payments to another person required by "section 6049(a) (relating to payments of interest)."  26 U.S.C. § 6724(d)(1)(A)(iv). Section 6049(a), in turn, require that "[e]very person (1) who makes payments of interest . . . to any other person during any calendar year, or (2) who receives payments of interest . . . as a nominee and who makes payments . . . to any other person with respect to the interest so received, shall make a return."

The Amended Complaint does not allege that American Home paid interest to Plaintiff, nor does it allege that American Home received interest from Plaintiff as a nominee.  Plaintiff submits that American Home erroneously completed the relevant 1098 forms as if it had paid interest to Plaintiff.  This, however, does not make American Home the party who "makes payments of interest" to another such that it would have to file an "information return" that could make it liable for misreporting under § 7434.  Instead, this error is the fraud that

10

Plaintiff alleges.  Accordingly, Counts LIV and LV will be dismissed, as Form 1098 is not the type of information return covered by § 6724(d)(1)(A) and § 7434.

### B.    Breach of Contract: Count LVI

Count LVI alleges that American Home breached its mortgage agreement with Plaintiff.  The statute of limitations for breach of a written contract is five years; the cause of action accrues and the limitations period commences on the date of the alleged breach.  Va. Code Ann. §§ 8.01-230 & 8.01-246(2); *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).  The statute of limitations for breach of an oral contract or implied contractual duties is three years.  Va. Code Ann. § 8.01-246(4); *see also Laios v. Wasylik*, __ F. Supp. 2d __, 2008 WL 2741158, at *2 (E.D. Va. Apr. 2, 2008).

American Home argues that this claim is untimely because it only serviced Plaintiff's loan until September 2001, when it sold the loan to Astoria.  Thus, any breaches must have occurred prior to that time, more than five years before Plaintiff filed the Amended Complaint.

Plaintiff submits that American Home is liable for activities that occurred after 2001 because it was an agent, principal, partner of, in identity of interest with, or part of a "banking syndicate" with Alliance.  Compl. at ¶¶ 497-98.  Based on this alleged relationship, Plaintiff asserts that American

11

Home breached its contract with Plaintiff when Alliance failed to release a lien from the first mortgage on the Property.[4]

The loan governed by the mortgage agreement between Plaintiff and American Home was issued in July 2001 and sold to Astoria in September 2001.  American Home stopped servicing the loan when Astoria purchased it.  Even assuming that American Home and Alliance did act together in one of the relationships that Plaintiff has alleged, this claim for breach of contract is untimely.  Alliance was obligated to release its lien on the Property some time after the loan was paid on July 23, 2001, but failed to do so until June 2003.  As noted above, a breach of contract action accrues on the date of the alleged breach, not on the date that the breach is cured.  Thus, this breach accrued some time shortly after July 2001, not in June 2003, and falls well outside of the five-year statute of limitations.  The Court will dismiss Count LVI.

### C.   Fraud: Count LVII

In Virginia, the statute of limitations for fraud is two years, and begins running when the alleged fraud is discovered or should have been discovered by the exercise of reasonable diligence.  Va. Code Ann. §§ 8.01-243 & 8.01-249; *Va. Imports, Inc. v. Kirin Brewery of Am., LLC*, 296 F. Supp. 2d 691,

---

[4] The first mortgage was issued by Roslyn, acquired by American Home, sold to Alliance, and then fully paid in July 2001 when Plaintiff refinanced the amount owed with a new loan from American Home.

699 (E.D. Va. 2003).  This discovery rule places the burden on the plaintiff "to prove that he acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action." *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962). To comply with the due diligence requirement, the plaintiff must use "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances."  *Id.*

American Home argues that Plaintiff's fraud claim should be dismissed on statute of limitations grounds because Plaintiff actually discovered any fraud that may have occurred in 2001.  It supports this argument with exhibits to the Amended Complaint, which indicate that, in 2001, both American Home and Alliance informed Plaintiff about mistakes in the handling of Plaintiff's accounts.  *Id.* at 6-7 (citing Compl. at Ex. 7).[5] Exhibits 9D, 9E, and 10 also support this assertion.  *See* Compl. at Ex. 9D-E,[6] 10.[7]  Plaintiff also threatened to sue Alliance in

---

[5] Exhibit 7 is an e-mail that Plaintiff received in May 2001 from Nancy Fortune of American Home, which refers to a "problem regarding taxes" that "may negatively impact [Plaintiff's] ability to refinance with [American Home]."

[6] Exhibits 9D and 9E are a letter that Plaintiff received from Alliance dated August 29, 2001, providing detailed information about activity in his escrow account.

[7] Exhibit 10 is a letter dated December 5, 2001, in which Alliance responded to Plaintiff's "recent inquiry" regarding "the status of [his] real estate property taxes" and provided Plaintiff with a check for $120 as reimbursement

13

2001, after he became aware of these mistakes.  Compl. at 7A.[8]
Thus, American Home submits that Plaintiff was required to file
his fraud claim by 2003.

This fraud claim is based on American Homes' alleged
violation of escrow, contract, loan servicing, and property tax
payment requirements.  Compl. at ¶ 510.  Plaintiff also alleges
that American Home, as an agent, principal, partner of, in
identity of interest with, or part of a "banking syndicate" with
Alliance, is responsible for Alliance's "unlawful lien and
unlawful tax reporting . . . through most of 2003."  *Id.* at ¶
507.

Plaintiff argues that he could not have "discovered"
American Homes' fraud by 2001 because he "requested related
records from [American Home], beginning in 2001 and extending
through May 9, 2006, and these records were withheld [by American
Home] in violation of Federal law."  Pl.'s Mem. in Opp'n at 20.
The Court finds that Plaintiff's unsupported assertions that
American Home withheld loan records are insufficient to negate
Plaintiff's own evidence that he was informed of the actions he
complains of in 2001.  First, these assertions are not included
in the Amended Complaint, while Plaintiff's correspondence with

---

for penalties in connection with delinquent property taxes that Plaintiff had
paid.

[8] Exhibit 7A is a letter from Plaintiff to Alliance dated May 30, 2001 in
which Plaintiff argued that "Alliance had MADE a MISTAKE in releasing/not
'blocking' the non-payment information to the credit reporting agencies."
(emphasis in original).

American Home and Alliance is.  Second, the substance of the correspondence covers the allegations in the Amended Complaint, with the exception of Alliance's failure to release the mortgage lien on the Property.  According to the Amended Complaint, Plaintiff was, or should have been, aware of this failure between April and June 2003.  *See* Compl. at Ex. 13, 14, 27.  These dates occur more than two years before Plaintiff filed the Amended Complaint.

American Home also argues that Plaintiff failed to plead fraud with the particularity required.  "Under Federal Rule of Civil Procedure 9(b), a claim of fraud must allege with particularity a false representation by a defendant of a material fact with the intent to mislead, and that the plaintiff reasonably relied on the representations to his detriment." *Goldstein v. Malcolm G. Fries & Assoc., Inc.*, 72 F. Supp. 2d 620, 627 (E.D. Va. 1999) (citing *Sneed v. Am. Bank Stationary Co.,* 764 F. Supp. 65, 67-68 (W.D. Va. 1991)).  "The minimum type of circumstances that must be pleaded include the time, place, content, and identity of authorship of any alleged misrepresentation."  *Id.* (citations omitted).

Plaintiff has failed to meet this standard.  He makes only general statements that American Home "violated numerous mortgage lender obligations through 2001," Compl. at ¶ 503, and "violated basic escrow, [and] other contractual obligations

15

related to loan servicing, including the timely payment of property taxes," *id.* at ¶ 510.  Plaintiff also includes a general allegation that American Home "had good reason to know from 2001 onward that its servicing and reporting [of the loan] were mistaken and yet it persisted."  *Id.* at ¶ 556.

Count LVII contains no information as to the time, place, or content of the alleged fraud.  It is based on conclusory allegations that fail to satisfy Rule 9(b).  In addition, Plaintiff's claim falls outside the two year statute of limitations.  For these reasons, the Court will dismiss Count LVII of the Amended Complaint.

### D.  Negligence: Count LVIII

Count LVIII alleges that American Home negligently when it serviced Plaintiff's loan.  The statute of limitations for negligence is two years and begins to run on the date that the plaintiff is injured, even if the injury is slight.  Va. Code Ann. §§ 8.01-230, 8.01-243 & 8.01-248; *McHenry*, 448 S.E.2d at 392-93.  However, under Virginia law, professional malpractice actions are treated as breach of contract actions and therefore fall within the limitations period applicable to contract actions.  *Ranney v. Nelson*, 176 Fed. Appx. 405, 409 (4th Cir. 2006); *see also Va. Milit. Inst. v. King*, 232 S.E.2d 895, 899-900 (Va. 1977) (finding that action for the negligence of an architect, while sounding in tort, was an action for breach of

contract governed by the statute of limitations applicable to contracts); *Oleyar v. Kerr*, 225 S.E.2d 398, 400 (Va. 1976) (reaching the same conclusion as *King* in a negligence action against an attorney).  The statute of limitations for breach of a written contract is five years.  The cause of action accrues and the limitations period commences on the date of the alleged breach.  Va. Code Ann. §§ 8.01-230 & 8.01-246(2); *Arrington v. Peoples Sec. Life Ins. Co.*, 458 S.E.2d 289, 291 (Va. 1995).  The statute of limitations for breach of an oral contract or implied contractual duties is three years.  Va. Code Ann. § 8.01-246(4); *see also Laios v. Wasylik*, __ F. Supp. 2d __, 2008 WL 2741158, at *2 (E.D. Va. Apr. 2, 2008).

American Home argues that Plaintiff's negligence claim is untimely, as any negligent conduct could have occurred no later than September 2001, when it sold the loan it had issued to Plaintiff to Astoria.  Plaintiff submits that American Home is liable for activities that occurred after 2001 because it was an agent, principal, partner of, in identity of interest with, or part of a "banking syndicate" with Alliance.  Compl. at ¶¶ 518-19.  Based on this alleged relationship, Plaintiff asserts that American Home negligently performed its obligations when Alliance

failed to release a lien from the first mortgage[9] on the
Property.

Plaintiff's claims against American Home based on its
handling of the loan that it issued in July 2001 and sold in
September 2001 are barred by the statute of limitations.  Any
negligent conduct must have occurred no later than September
2001, more than five years before Plaintiff filed the Amended
Complaint.  Even assuming that American Home and Alliance did act
together in one of the relationships that Plaintiff has alleged,
this negligence claim is untimely.  Alliance was obligated to
release its lien on the Property shortly after the loan was paid
on July 23, 2001, but failed to do so until June 2003.  As noted
above, a neglience action accrues on the date of the alleged
injury, not on the date that the injury is alleviated.  Thus,
this action accrued shortly after July 2001, not in June 2003,
and falls well outside of the five-year statute of limitations.

In addition, the Court notes that Plaintiff's
negligence claim simply alleges negligent performance of
contractual duties.  Because a tort action cannot be based solely
on a negligent breach of contract, Plaintiff has failed to state
a negligence claim.  *See Richmond Metro.*, 507 S.E.2d at 347; *see
also Umstead v. Chase Manhattan Mortg. Corp.*, 2005 WL 2233554, at

---

[9] The first mortgage was issued by Roslyn, acquired by American Home, sold to
Alliance, and then fully paid in July 2001 when Plaintiff refinanced the
amount owed with a new loan from American Home.

*4 (W.D. Va. Sept. 13, 2005).  For these reasons, the Court will grant American Home's Motion to Dismiss Count LVIII.

### E.    Breach of Fiduciary Duty: Count LIX

Count LIX alleges that American Home breached its fiduciary duties to Plaintiff when it serviced Plaintiff's loan. A breach of fiduciary duty claim is governed by a two-year statute of limitations, which begins to run on the date the plaintiff is injured.  Va. Code Ann. §§ 8.01-230 & 8.01-248; *Goldstein*, 72 F. Supp. 2d at 626.

American Home argues that this claim is untimely, as any breach of fiduciary duty must have occurred by September 2001, when it sold the loan to Astoria and stopped servicing it. Plaintiff submits, however, that American Home is liable for activities that occurred after 2001 because it was an agent, principal, partner of, in identity of interest with, or part of a "banking syndicate" with Alliance.  Compl. at ¶¶ 529-30.  Based on this alleged relationship, Plaintiff asserts that American Home breached its fiduciary duties when Alliance failed to release a lien from the first mortgage[10] on the Property.

Plaintiff's claims against American Home based on its handling of the loan that it issued in July 2001 and sold in September 2001 are barred by the statute of limitations because

---

[10] The first mortgage was issued by Roslyn, acquired by American Home, sold to Alliance, and then fully paid in July 2001 when Plaintiff refinanced the amount owed with a new loan from American Home.

19

any breach of fiduciary duty must have occurred no later than September 2001, far more than two years before Plaintiff filed the Amended Complaint.  Plaintiff's claims against American Home based on the alleged relationship between American Home and Alliance are also barred by the statute of limitations because the lien that Plaintiff objects to was released in May 2003, also more than two years before Plaintiff filed the Amended Complaint.

Plaintiff next argues that the discovery rule should apply to these claims based on the Fourth Circuit's decision in *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 235 (4th Cir. 2000), in which the Court held that a fiduciary engaging in self-dealing creates a presumption of fraud.  *Id.*  The discovery rule places the burden on the plaintiff "to prove that he acted with due diligence and yet did not discover the fraud or mistake until within the statutory period of limitation immediately preceding the commencement of the action."  *Hughes v. Foley*, 128 S.E.2d 261, 263 (Va. 1962).

This Court does not read *Al-Abood* as applying the discovery rule to breach of fiduciary duty claims that happen to create a presumption of fraud.  Without clearer direction from the Fourth Circuit or the Virginia courts, this Court does not believe that it should contradict Virginia statutory law and apply the discovery rule to breach of fiduciary duty claims.

20

Further, this claim must fail because there was no fiduciary relationship between American Home and Plaintiff.  A fiduciary relationship exists where "special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence."  *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 295 (Va. 2007) (citations omitted).  Fiduciary duties can arise either from a contractual provision or through a common law duty.  *Foreign Mission Bd. of Southern Baptist Convention v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).

Virginia courts recognize fiduciary relationships between an attorney and client, an agent and principal, a trustee and cestui que trust, parent and child, siblings, and caretaker and invalid.  *Johnson v. D & D Home Loans Corp.*, 2005 WL 850870, at *9 (E.D. Va. Jan. 23, 2008) (citations omitted).  The banker-borrower relationship, however, does not, by itself, establish a fiduciary relationship.  *See, e.g., Marketic v. U.S. Bank Nat. Ass'n*, 436 F. Supp. 2d 842, 855 (N.D. Tex. 2006) (no fiduciary duty between mortgagor and mortgagee); *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3rd Cir. 1998) (no fiduciary duty between customer and lender because lender is necessarily on the other side of the negotiating table); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 678-79 (S.D.N.Y. 1991), *aff'd*, 962 F.2d 1 (2d Cir. 1992) (no fiduciary

21

relationship between borrower and lender absent extraordinary circumstances).

Here, Plaintiff and American Home are a borrower and lender whose relationship was defined entirely by contract. Plaintiff makes no argument that a routine home loan contract establishes a fiduciary relationship.  Instead, Plaintiff cites the case of *Dameron v. Tyler*, 155 F.3d 718 (4th Cir. 1998), where the Fourth Circuit held that an express trust is created – and a fiduciary relationship established – "when the parties affirmatively manifest an intention that certain property be held in trust for the benefit of a third party."  *Id.* at 722. Plaintiff provides no argument that a routine home loan contract establishes a fiduciary relationship.  The Court finds that no fiduciary relationship exists between the parties.  For all of these reasons, the Court will grant American Home's Motion to dismiss Count LXIII.

## IV.  Conclusion

For these reasons, the Court will grant the motion and dismiss all claims against Defendant American Home Mortgage Corporation (Counts LIV - LIX).

_____An appropriate Order will issue.___

January 9, 2009              _____/s/_____
Alexandria, Virginia                 James C. Cacheris
                           UNITED STATES DISTRICT COURT JUDGE

22